**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

---

| | |
|---|---|
| ELIZABETH ETHERTON, <br><br>                Plaintiff, <br><br> v. <br><br> JOSEPH R. BIDEN, *in his official capacity as President of the United States*; OFFICE OF HEAD START; BERNADINE FUTRELL, PH.D., *in her official capacity as Director of the Office of Head Start*; ADMINISTRATION FOR CHILDREN & FAMILIES; JOOYEUN CHANG, *in her official capacity as Acting Assistant Secretary and Principal Deputy Assistant Secretary for the Administration for Children & Families*; DEPARTMENT OF HEALTH & HUMAN SERVICES; XAVIER BECCERA, *in his official capacity as Secretary of the Department of Health & Human Services*; <br><br>                Defendants. | No. 1:22-cv-00195-LMB-JFA <br><br><br> **First Amended Complaint for Declaratory and Injunctive Relief** |

---

### Introduction

1.   On September 9, 2021, President Biden unveiled a comprehensive plan to vaccinate as many Americans as possible against COVID-19. Included in that plan was a COVID-19 vaccine mandate on persons that Head Start providers employ.

2.   The Office of Head Start, the Administration for Children & Families, and the Department of Health & Human Services published an interim final rule in the Federal Register on Monday, November 30, 2021, 86 Fed. Reg. 68,052, that provides

a COVID-19 vaccination mandate on all staff, student-facing contractors, and all volunteers to have received the second dose of the COVID-19 vaccine by January 31, 2022; a universal mask mandate on all Head Start participants over age two; and for immediate implementation without notice-and-comment (the "Rule" or "Head Start Rule").

3.     Two federal district courts have already recognized that the Rule is likely illegal and enjoined it. *Texas v. Becerra*, No. 5:21-CV-300-H, 2021 U.S. Dist. LEXIS 248309 (N.D. Tex. Dec. 31, 2021); *Louisiana v. Becerra*, No. 3:21-CV-04370, 2022 U.S. Dist. LEXIS 1333 (W.D. La. Jan. 1, 2022). However, none of those injunctions cover Plaintiff in the Eastern District of Virginia.

4.     Plaintiff is an employee of a Head Start provider, located in Fairfax, Virginia, who has not obtained the COVID-19 vaccine and does not wish to do so. On January 14, 2022, her employer issued a memo to employees warning them that by February 28, 2022, they must provide proof of vaccination or submit documentation for approval of an exemption. The memo also warned that "If you are not vaccinated or do not have the exemption you will not be able to continue to work for [Fairfax County Public Schools] in the PreK and Early Head Start program." After Plaintiff submitted documentation requesting approval of a medical exemption on February 28, 2022, her employer sent her an email that same day denying the exemption request. As a result, Plaintiff faces termination under the terms of her employer's vaccinate mandate, which it issued to comply with the Head Start Rule.

5.      Through this lawsuit, Plaintiff challenges the Head Start Rule as being published without notice and comment in violation of the Administrative Procedure Act (APA), 5 U.S.C. § 553, in excess of ACF's statutory authority, as having been adopted without necessary consultation with experts, and she alleges that it is arbitrary and capricious. She also brings a constitutional challenge to the Head Start Rule under the nondelegation doctrine. Plaintiff asks that this Court enter declaratory judgment, and permanent relief enjoining Defendants' enforcement of the Head Start Rule.

## Parties

6.      Elizabeth Etherton is a veteran pre-kindergarten teacher employed by Fairfax County Public Schools at one of its elementary schools in Alexandria, Virginia. She has not obtained the COVID-19 vaccine and does not wish to do so.

7.      Defendants are officials of the United States government and United States governmental agencies responsible for implementing the Head Start Rule.

8.      Defendant Joseph R. Biden is the President of the United States. President Biden is sued in his official capacity.

9.      Defendant United States Office of Head Start ("OHS") is an office within the Administration for Children & Families ("ACF"), which is a division of the Department of Health & Human Services. OHS administers grant funding and oversight to 1,600 public and private nonprofit and for-profit agencies that provide Head Start services.

10.     Defendant Bernadine Futrell, Ph.D., is the Director of the Office of Head Start. She is sued in her official capacity.

11.     Defendant Administration for Children & Families is a division of the Department of Health & Human Services. ACF promotes the economic and social well-being of families, children, individuals, and communities.

12.     Defendant JooYeun Chang is the Acting Assistant Secretary and Principal Deputy Assistant Secretary for ACF. She is sued in her official capacity.

13.     Defendant Department of Health & Human Services ("HHS") is an independent federal agency.

14.     Defendant Xavier Beccera is Secretary of the Department of Health & Human Services. He is sued in his official capacity.

## Jurisdiction and Venue

15.     The Court has jurisdiction under 5 U.S.C. §§ 702 and 703 and 28 U.S.C. §§ 1331, 1346, and 1361, the United States Constitution, and pursuant to the Court's equitable powers.

16.     5 U.S.C. §§ 702 and 706 and 28 U.S.C. §§ 1361, 2201, and 2202 authorizes the Court to award the requested declaratory and injunctive relief.

17.     Venue is appropriate under 28 U.S.C. § 1391(e)(1)(B) because Defendants are agencies or officers of the United States and "a substantial part of the events or omissions giving rise to the claim occurred" in this District. Venue is also appropriate under 28 U.S.C. § 1391(e)(1)(C) because the Plaintiff resides and works in this

District, no real property is involved, and Defendants are agencies or officers of the United States.

## Factual Allegations

18.     On July 23, 2021, the White House acknowledged that imposing vaccine mandates is "not the role of the federal government; that is the role that institutions, private-sector entities, and others may take . . . . [W]e're going to continue to work in partnership to fight misinformation. And we're going to continue to advocate and work in partnership with local officials and—and trusted voices to get the word out." Jen Psaki, White House Press Briefing (July 23, 2021).[1]

19.     Yet, on September 9, 2021, President Biden reversed course, announcing "a new plan to require more Americans to be vaccinated, to combat those blocking public health." *Remarks by President Biden on Fighting the COVID-19 Pandemic*, White House (Sept. 9, 2021).[2] He stressed that: "we must increase vaccinations among the unvaccinated with new vaccination requirements." *Id*. He noted: "The bottom line: We're going to protect vaccinated workers from unvaccinated co-workers." *Id*.

20.     The President indicated that he was "frustrated with the nearly 80 million Americans who are still not vaccinated" *id*., claimed that unvaccinated persons "can cause a lot of damage" *id*., and noted that he would not allow the unvaccinated, for

---

[1]   *See*   https://www.whitehouse.gov/briefing-room/press-briefings/2021/07/23/press-briefing-by-press-secretary-jen-psaki-july-23-2021/.
[2]   https://www.whitehouse.gov/briefing-room/speeches-remarks/2021/09/09/remarks-by-president-biden-on-fighting-the-covid-19-pandemic-3/.

whom his "patience is wearing thin," *id.*, "to stand in the way of protecting the large majority of Americans who have done their part . . . ." *Id.*

21.    The President announced that the federal government would issue five new COVID-19 vaccine mandates.

22.    First, he announced an OSHA mandate requiring companies with 100 or more employees to either mandate vaccines or to have a policy that required employees to get tested weekly if they chose not to get vaccinated. OSHA issued its Emergency Temporary Standard implementing the vaccine mandate on November 5, 2021. The United States Court of Appeals for the Fifth Circuit issued a nationwide stay of that mandate and held that it likely exceeded OSHA's statutory authority. *BST Holdings, L.L.C. v. OSHA*, No. 21-60845, 2021 U.S. App. LEXIS 33698, at \*27 (5th Cir. Nov. 12, 2021). Although the case was transferred to the Sixth Circuit, which dissolved that stay, the U.S. Supreme Court shortly thereafter granted its own stay of the OSHA mandate holding that OSHA likely lacked the statutory authority to promulgate the vaccine mandate. *NFIB v. OSHA*, 142 S. Ct. 661, 666-67 (2022).

23.    Second, the President also announced a mandate requiring healthcare employees working at facilities that accept Medicare or Medicaid patients to get vaccinated.

24.    Third, President Biden announced a mandate requiring all executive branch federal employees to get vaccinated. On September 9, 2021, the President issued Executive Order 14,043, Requiring Coronavirus Disease 2019 Vaccination for Federal Employees. *See* Exec. Order No. 14,043, 86 Fed. Reg. 50,989 (Sept. 9, 2021).

25.     Fourth, President Biden announced a mandate requiring employees of federal contractors to get vaccinated. This mandate was also covered by Executive Order 14,043 issued by the President on September 9, 2021. On December 7, 2021, a federal district court in Georgia issued an order temporarily enjoining enforcement of the federal contractor vaccine mandate nationwide.

26.     Finally, President Biden announced that "we'll require all of nearly 300,000 educators in the federal paid program, Head Start program, [to] be vaccinated." *Remarks by President Biden*, *supra* note 2. The same day, the director of the Office of Head Start at HHS sent a letter to Head Start providers introducing, "a new requirement for Head Start programs. All Head Start employees must be vaccinated against COVID-19." The letter promised "rulemaking to implement this policy." This Head Start Rule is the subject of this lawsuit.

27.     On Monday, November 30, 2021, OHS, ACF, and HHS published an interim final rule requiring a vaccination mandate on all staff, student-facing contractors, and all volunteers to have received the second shot by January 31, 2022, and a universal mask mandate on all Head Start participants over age two. The Rule stated it would be immediately implemented without notice-and-comment. 86 Fed. Reg. 68,052.

28.     The Rule significantly departed from President Biden's September 9, 2021, remarks in at least two major ways: First, President Biden said nothing about mandating vaccines for all Head Start volunteers—nearly 1.1 million people, approximately two-thirds of whom are parents of children who participate in the

program. Second, nothing in the White House's September 9 plan made any mention of requiring program participants to wear masks.

29.    Unlike other federal government COVID-19 mitigation measures that only target certain areas of the country depending on whether they are high/medium/low transmission areas, the Rule is a nationwide, one-size-fits-all mandate. For example, the U.S. Department of Agriculture's Food Safety and Inspection recently updated its masking requirements so that they only have to be worn in counties experiencing high levels of COVID-19 transmission. FSIS Notice 14-22, *Revised Availability of Protective Equipment for Employees Stationed at USDA and FSIS Facilities*, U.S. Dept. of Agric. Food Safety and Inspection Serv. (Mar. 15, 2022).[3] The CDC's eviction moratorium also targeted counties experiencing "substantial or high levels of COVID-19 transmission . . ." before the U.S. Supreme Court held that it likely exceeded that agency's statutory authority. *Ala. Ass'n of Realtors v. HHS*, 141 S. Ct. 2485, 2486 (2021).

30.    The Head Start Act, 42 U.S.C. § 9801 et seq., provides the sole legislative authority for OHS, ACF, and HHS to act to implement the Head Start Program.

31.    There is no explicit statutory basis for mandating vaccination under the Head Start Act.

32.    The Rule cites 42 U.S.C. § 9836a(a)(1)(C)–(E) as the basis for Defendants' authority to implement the mandate on staff, student-facing contractors, and all volunteers to obtain the COVID-19 vaccine.

---

[3] https://www.fsis.usda.gov/sites/default/files/media_file/2022-03/14-22.pdf

33.    42   U.S.C.   §   9836a(a)(1)(C)   provides   HHS   the   authority   to   set "administrative and financial management standards" for Head Start programs. 42 U.S.C. § 9836a(a)(1)(D) provides HHS the authority to set "standards relating to the condition and location of facilities (including indoor air quality assessment standards, where appropriate)." 42 U.S.C. § 9836a(a)(1)(E) provides HHS the authority to set "such other standards as the Secretary finds to be appropriate."

34.    As the Head Start Rule acknowledges, the Administrative Procedure Act (APA), 5 U.S.C. § 553, requires ACF to publish a notice of proposed rulemaking in the Federal Register and invite public comment on the proposed rule before the provisions of the rule take effect. *See* 86 Fed. Reg. 68,058. Section 553(b) requires the agency to publish a notice of the proposed rule in the Federal Register that includes a reference to the legal authority under which the rule is proposed, and the terms and substance of the proposed rule or a description of the subjects and issues involved. Section 553(c) requires the agency to give interested parties the opportunity to participate in the rulemaking through public comment before the provisions of the rule take effect.

35.    However, Section 553(b)(B) of the APA authorizes the agency to waive these procedures, if it finds good cause that notice and comment procedures are impracticable, unnecessary, or contrary to the public interest and incorporates a statement of the finding and its reasons in the rule issued.

36.    The Rule asserts that "it would be impracticable and contrary to the public interest" for ACF to undertake normal notice and comment procedures because the

outbreaks associated with the Delta variant of COVID-19 "have shown that current levels of COVID-19 vaccination coverage up until now have been inadequate to protect Head Start staff, children, and families." 86 Fed. Reg. at 68,058. The Rule further justifies failing to undertake normal notice and comment procedures because "failure to achieve sufficiently high levels of vaccination based on voluntary efforts and patchwork requirements, potential harm to children from unvaccinated staff, continuing strain on the health care system, and known efficacy and safety of available vaccines" justifies "a vaccine requirement for Head Start staff, certain contractors, and volunteers" and "is an essential component of the nation's COVID-19 response." 86 Fed. Reg. at 68,059.

37.     The "good cause" exception in 5 U.S.C. § 553 is read narrowly in order to avoid providing agencies with an escape clause from the APA notice and comment requirements. *United States v. Johnson*, 632 F.3d 912, 928 (5th Cir. 2011). Circumstances justifying reliance on this exception are "indeed rare." *Council of Southern Mountains, Inc. v. Donovan*, 653 F.2d 573, 580 (D.C.C. 1981). The good cause exception has been described as "meticulous and demanding," "narrowly construed," "reluctantly countenanced," and evoked only in "emergency situations." *Sorenson Communications, Inc. v. F.C.C.*, 755 F.3d 702, 706 (D.C.C. 2014) (citations omitted).

38.     As early as August 2021, CDC Director Rochelle Walensky acknowledged that "what [the vaccines] can't do anymore is prevent transmission." Tim Hains, *CDC Director: Vaccines No Longer Prevent You From Spreading COVID*, RealClearPolitics

(Aug. 6, 2021).[4] In fact, the failure of the vaccines to prevent transmission is what led the CDC to do a sudden about-face on its mask standards last summer. In May 2021, it said that fully vaccinated individuals did not need to wear a mask indoors but then flip-flopped in July 2021 saying that even vaccinated individuals should wear one in areas of high community transmission, i.e., most of the U.S at that time. Yasmeen Abutaleb, *CDC urges vaccinated people in covid hot spots to resume wearing masks indoors*, Wash. Post (July 28, 2021);[5] Mansas Mishra, *Most COVID-19 cases in Massachusetts outbreak among vaccinated, says CDC*, Reuters (July 30, 2021);[6] *74 Percent of COVID-19 Cases From Massachusetts Outbreak Occurred in Fully Vaccinated People: Study*, NTD (July 30, 2021);[7] Yasmeen Abutaleb et al., *CDC: Fully Vaccinated People Don't Have to Wear Masks Inside*, The Epoch Times (May 13, 2021).[8] These statements and actions by the CDC dealt with the Delta variant.

39.     This is even more true for Omicron. Subsequent to the Rule's publication, Omicron has replaced Delta as the dominant COVID-19 variant in the United States. The CDC predicts that "anyone with Omicron infection can spread the virus to others, even if they are vaccinated or don't have symptoms." *Omicron Variant: What You*

---

[4] https://www.realclearpolitics.com/video/2021/08/06/
cdc_director_vaccines_no_longer_prevent_you_from_spreading_covid.html#!.
[5] https://www.washingtonpost.com/health/2021/07/27/cdc-masks-guidance-indoors/.
[6] https://www.reuters.com/world/us/majority-covid-19-cases-large-public-events-
were-among-vaccinated-us-cdc-study-2021-07-30/.
[7] https://www.ntd.com/74-percent-of-covid-19-cases-from-massachusetts-outbreak-
occurred-in-fully-vaccinated-people-study_652044.html.
[8] https://www.theepochtimes.com/cdc-fully-vaccinated-people-dont-have-to-wear-
masks-inside_3814539.html.

*Need to Know*, CDC (Dec. 20, 2021).[9] Pfizer's CEO recently stated that the Pfizer vaccine (without a booster) is "not enough for omicron." Spencer Kimball, *Pfizer CEO says two COVID vaccine doses aren't 'enough for omicron'*, CNBC (Jan. 10, 2022).[10] Not only are the vaccines ineffective at slowing Omicron's spread, data from Israel suggests that even a fourth shot (second booster) "does little to stave off infection from the omicron variant." *Israeli Hospital: 4th Vaccination Does Not Prevent Spread of Omicron*, Voice of Am. (Jan. 17, 2022).[11]

40.    Not only that, all state-wide mask mandates have been lifted in recent months in response to declining infection rates and rising hospital capacity. Kaia Hubbard, *Final Statewide Mask Mandate Ends as Hawaii Restriction Expires* (Mar. 25, 2022);[12] *see also* Rachel Tresiman, *New York Lifts Indoor Mask Mandate, with California and N.J. Mandates Also Set to End*, NPR (Feb. 9, 2022).[13] Several jurisdictions (Washington D.C. and Chicago) that had enacted vaccine requirements to dine at a restaurant or patronize businesses have repealed them. Michael Brice-Saddler & Karina Elwood, *D.C. to drop coronavirus vaccination requirement to enter businesses*, Wash. Post (Feb. 14, 2022);[14] Fran Spielman & Nader Issa, *Chicago lifting*

---

[9] https://www.cdc.gov/coronavirus/2019-ncov/variants/omicron-variant.html.

[10] https://www.cnbc.com/2022/01/10/pfizer-ceo-says-two-covid-vaccine-doses-arent-enough-for-omicron.html.

[11] https://www.voanews.com/a/israeli-hospital-4th-vaccination-does-not-prevent-spread-of-omicron-/6401247.html.

[12] https://www.usnews.com/news/best-states/articles/2022-03-25/final-statewide-mask-mandate-ends-as-hawaii-restriction-expires

[13] https://www.npr.org/2022/02/09/1079555193/new-york-new-jersey-end-mask-mandate-ending.

[14] https://www.washingtonpost.com/dc-md-va/2022/02/14/dc-covid-restrictions-lifted/.

*mask and vaccine mandates on Feb. 28, will keep masks in schools for now*, Chicago Sun-Times (Feb. 22, 2022).[15] This Court joined this trend when it recently lifted its requirements that visitors to its courthouses wear a mask and that admitted counsel either provide proof of vaccination or a negative COVID-19 test before entering its courthouses. *Court Operations Under the Exigent Circumstances Created by the Outbreak of Coronavirus Disease 2019 (COVID-19): Modification of COVID-19 Protocols, Including Mask and Distancing* Policy, General Order No. 2022-02 (Mar. 4, 2022).[16]

41.     Indeed, Omicron remains "in retreat" and is less severe than previous variants. David Leonhardt, *Omicron is in Retreat*, N.Y. Times (Jan. 19, 2022);[17] Karen Brooks Harper et al., *"Light at the end of the tunnel": Texas COVID-19 hospitalizations down as omicron wave appears to crest*, The Texas Tribune (Feb. 2, 2022).[18] Since this lawsuit was filed, the evidence has shown that Omicron's "sub-variant" known as "BA.2" is also mild. Spender Kimball, *Omicron BA.2 subvariant will soon dominate in U.S., but Fauci doesn't expect another surge*, CNBC (Mar. 23, 2022).[19] It is becoming more and more apparent that COVID is "moving into an endemic phase." *Id.*

---

[15] https://chicago.suntimes.com/city-hall/2022/2/22/22946054/chicago-coronavirus-mask-mandates-covid-restrictions-vaccine-proof-bars-restaurants-gyms-lightfoot.
[16] https://www.vaed.uscourts.gov/sites/vaed/files/General%20Order%202022-02.pdf
[17] https://www.nytimes.com/2022/01/19/briefing/omicron-variant-cases.html.
[18] https://www.texastribune.org/2022/02/02/TEXAS-OMICRON-HOSPITALIZATIONS/.
[19] https://www.cnbc.com/2022/03/23/covid-omicron-bapoint2-subvariant-will-soon-dominate-in-us-but-fauci-doesnt-expect-another-surge.html

42.    Nevertheless, subsequent to the Head Start Rule's publication, and only because of the Rule, Plaintiff's employing Head Start agency informed her that she must either submit proof of vaccination by January 28, 2022, or apply for a religious or medical exemption by February 28, 2022. Her employer also warned that if she failed to meet either the vaccination requirement or receive an exemption, that she would be terminated.

43.    On January 31, 2022, Plaintiff requested a medical exemption and submitted supporting documentation to her employer, Fairfax County Public Schools.

44.    But on February 7, 2022, the employer informed Plaintiff that she needed to submit further documentation in order to obtain a medical exemption. It also stated that she needed to do this by February 28, 2022.

45.    On February 28, 2022, Ms. Etherton submitted a revised request for a medical exemption including a note from her doctor, on which the doctor stated: "This patient can not have any COVID vaccine." Nevertheless, she received two emails from her employer that same day informing her that it was denying her request for a medical exemption. As a result, pursuant to the terms of the employer's vaccine mandate, which it enacted to comply with the Head Start Rule, she faces termination.

46.    Ms. Etherton has served preschool students for over fifteen years. She is recommended for reappointment. She has also worked tirelessly in her position and had accrued 643 hours of leave at the time of this lawsuit's filing given that she rarely takes time off of work, all of which will be lost with her termination. When employer switched to virtual learning during the 2020-21 school year in response to COVID-

19, she embraced the challenge. She rearranged her home so that it had the space needed to teach children virtually, learned new technology platforms, researched ways to bring best educational practices to the virtual classroom, revamped curriculum so it could be taught virtually, and even held after-hours intervention and reading groups.

47.    When her employer resumed in-person learning in the 2021-22 school year, Plaintiff again recalibrated her curriculum. She also dealt with having to face more demanding educational benchmarks with less teaching time due to having to wait with the preschoolers outside during bus driver shortages. She has also stayed after-hours to clean, prepare, and sanitize her classroom to mitigate preschoolers' possible exposure to COVID-19. She has also worked weekends to put together lesson plans.

### Claims for Relief

### Count I

**The Rule was published without notice and comment in violation of the Administrative Procedure Act (APA), 5 U.S.C. § 553 et seq.**

48.    The allegations in all preceding paragraphs are incorporated herein by reference.

49.    The APA provides that the court must "hold unlawful and set aside agency action" that is "without observance of procedure required by law." 5 U.S.C. § 706(2)(D).

50.    "Notice and comment are not mere formalities. They are basic to our system of administrative law." *NRDC v. Nat'l Highway Traffic Safety Admin.*, 894 F.3d 95, 115 (2d Cir. 2018).

51. ACF does not dispute that it issued the Rule as an interim final rule without notice and comment. Rather, the Rule itself invokes Section 553(b)(B) of the APA, and asserts that "it would be impracticable and contrary to the public interest" to undertake notice and comment because the Delta variant wave and data on effectiveness of vaccination both provide good cause to believe the public interest is served by immediate implementation. 86 Fed. Reg. at 68,058–059.

52. But it is well established that the "good cause" exception to notice-and-comment should be read narrowly in order to avoid providing agencies with an escape clause from the requirements Congress prescribed. *United States v. Johnson*, 632 F.3d 912, 928 (5th Cir. 2011). The good cause exception should not be used to circumvent the notice and comment requirements whenever an agency finds it inconvenient to follow them. *Id.* at 929.

53. "[A]n agency may not dispense with notice and comment procedures merely because it wishes to implement what it sees as a beneficial regulation immediately. Agencies presumably always believe their regulations will benefit the public. If an urgent desire to promulgate beneficial regulations could always satisfy the requirements of the good cause exception, the exception would swallow the rule and render notice and comment a dead letter." *Ass'n of Cmty. Cancer Ctrs. v. Azar*, 509 F. Supp. 3d 482, 498 (D. Md. 2020).

54. Instead, the exception is to be "narrowly construed" and only "reluctantly countenanced." *United States v. Ross*, 848 F.3d 1129, 1132 (D.C. Cir. 2017) (internal quotation marks and citations omitted). "[C]ircumstances justifying reliance on this

exception are 'indeed rare' and will be accepted only after the court has 'examine[d] closely proffered rationales justifying the elimination of public procedures.'" *Council of the Southern Mountains, Inc. v. Donovan*, 653 F.2d 573, 580 (D.C. Cir. 1981) (citation omitted). Courts therefore generally restrict agencies' use of the "good cause" exception "to emergency situations," *Mack Trucks, Inc. v. EPA*, 682 F.3d 87, 93 (D.C. Cir. 2012), such as where a "delay would imminently threaten life or physical property" or risk fiscal calamity." *Sorenson Communications, Inc. v. FCC*, 755 F.3d 702, 706–07 (D.C. Cir. 2014). And courts must rely only on the basis articulated by the agency itself for invoking the exception at the time of the rulemaking. *Johnson*, 632 F.3d at 929.

55.   Defendants' attempt to justify "good cause" for not implementing notice-and-comment procedures cannot meet this exacting standard.

56.   Although the Rule asserts that immediate implementation is justified because of the harmfulness of the Delta variant and data on effectiveness of vaccination, the Defendants ignore the fact that President Biden proposed this Rule on September 9, 2021, yet ACF did not actually publish the rule until November 30, 2021, nearly three months after the President proposed it. Further, the Rule itself gives staff, student-facing contractors, and all volunteers, until January 31, 2022, to receive the vaccine doses. It then takes an additional two weeks from receipt of the second dose to receive full immunity.[20] That is 156 days from the time the President

---

[20] "When You Are Fully Vaccinated," CDC.gov,
https://www.cdc.gov/coronavirus/2019-ncov/vaccines/second-shot.html.

issued a statement that the Rule would be issued and the time the Rule reached full effectiveness: over five months. ACF's finding that immediate implementation was necessary and therefore it had good cause to skip notice-and-comment is completely undermined by Defendants' delay in adopting it and putting it into effect. Although vaccines have been available for nearly a year, Defendants did not impose a mandate until nearly three months after the President instructed it to do so as part of his plan to federalize public-health policy because he did not like the fact that some individual Americans were not obtaining the COVID-19 vaccine.

57.     The Fifth Circuit reached a similar conclusion on the OSHA Mandate: "OSHA issued the Mandate nearly two months later, on November 5, 2021, and the Mandate itself prominently features yet another two-month delay. One could query how an 'emergency' could prompt such a 'deliberate' response." *BST Holdings, L.L.C. v. OSHA*, No. 21-60845, 2021 U.S. App. LEXIS 33698, at *28 n.11 (5th Cir. Nov. 12, 2021).

58.     Several other courts have also rejected efforts to use COVID as an excuse to skip notice-and-comment. *Florida v. Becerra*, 544 F. Supp. 3d 1241, 1296 (M.D. Fla. 2021) (CDC rule on cruise ships); *Regeneron Pharmaceuticals, Inc. v. United States Dept. of Health and Human Resources*, 510 F. Supp. 3d 29, 47 (S.D.N.Y. 2020) (CMS's rule on drug prices); *Chamber of Commerce of the United States v. United States Dept. of Homeland Security*, 504 F. Supp. 3d 1077, 1094 (N.D. Cal. Dec. 1, 2020) (DHS rule for visa program); *Association of Community Cancer Centers v. Azar*, 509 F. Supp. 3d 482, 496 (D. Md. Dec. 23, 2020) (CMS rule on Medicare Part B).

59.     Not only that, the Delta wave of COVID-19 has all but disappeared and Omicron has replaced it. Omicron is less severe than previous variants, including the Delta variant. New cases and hospitalizations have been on a steady decline throughout the country since January 2022. As a result, jurisdictions throughout the United States are lifting mask mandates and vaccine mandates.

60.     Further, COVID-19 is not a sufficient excuse for avoiding notice-and-comment, effectively insulating Defendants from public input and limiting the agencies' transparency, considering that public debate over mandatory vaccination has been brewing in this country since even before the first vaccines were available.

61.     The failure of Defendants to comply with the APA's notice-and-comment requirements provides an independent basis to enjoin the entire Head Start Rule. *United States v. Cain*, 583 F.3d 408, 424 (6th Cir. 2009).

## Count II

### The Rule exceeds ACF's statutory authority.

62.     The allegations in all preceding paragraphs are incorporated herein by reference.

63.     Under the APA, a court must "hold unlawful and set aside agency action" that is "not in accordance with law" or is "in excess of statutory . . . authority[] or limitations, or short of statutory right." 5 U.S.C. § 706(2)(A), (C).

64.     The Rule is in excess of ACF's statutory authority because the Head Start Act does not clearly authorize the Defendants to impose a vaccine or mask mandate.

65.     ACF has never relied upon the Head Start Act to mandate that staff, contractors, or volunteers take a vaccine. Nor is there anything in the Head Start Act

that explicitly provides ACF the authority to mandate vaccinations or masks among staff, contractors, or volunteers.

66.    Rather, the Rule cites 42 U.S.C. § 9836a(a)(1)(C)–(E) as the basis for Defendants' authority to implement the mandate on staff, student-facing contractors, and all volunteers to obtain the COVID-19 vaccine and wear masks.

67.    Section 9836a(a)(1)(C) provides HHS the authority to set "administrative and financial management standards" for Head Start programs. Section 9836a(a)(1)(D) provides HHS the authority to set "standards relating to the condition and location of facilities (including indoor air quality assessment standards, where appropriate)." Section 9836a(a)(1)(E) provides HHS the authority to set "such other standards as the Secretary finds to be appropriate." None of these sections in the Head Start Act provide sufficient authority to ACF, OHS, or HHS to mandate vaccines or masks among staff, contractors, or volunteers.

68.    This mandate is not an administrative or financial management standard.

69.    The plain meaning of the statutory term "administrative and financial management standard," 42 U.S.C. § 9836a(1)(C), covers things like bookkeeping and compliance. This mandate goes far beyond setting financial and administrative management standards for Head Start programs and veers into the regulation of public health.

70.    This mandate does not set standards for the condition and location of facilities.

71.     The plain meaning of the statutory term "condition and location of facilities" is limited to the physical places that Head Start services are provided. "The plain meaning of 'facility,' as that word is used [here], is something 'that is built, constructed, installed, or established to perform some particular function or to serve or facilitate some particular end.'" *See Lostrangio v. Laingford*, 261 Va. 495, 499, 544 S.E.2d 357, 359 (2001) (quoting Webster's Third New International Dictionary 812–13 (1993)). This provision gives HHS the power to regulate the safety of buildings and their surrounding spaces, not the quality or health consciousness of employees inside the buildings.

72.     Nor does the mandate fall under Section 9836a(a)(1)(E) providing the agency the authority to set "such other standards as the Secretary finds to be appropriate." Defendants' interpretation that a mandate is an "appropriate" use of the Secretary's authority raises significant constitutional questions.

73.     First, stretching Section 9836a(a)(1)(E) to provide the Secretary the authority to issue a vaccine mandate for every staff member, contractor, and volunteer in every Head Start program as an "appropriate" exercise of the Secretary's authority violates the major questions doctrine because such a substantial decision is the role of Congress. *BST Holdings*, 2021 U.S. App. LEXIS 33698 at *23 ("the major questions doctrine confirms that the Mandate exceeds the bounds of OSHA's statutory authority").

74.     Second, it violates the federalism doctrine for the Secretary to implement a vaccination mandate when that power is properly reserved to the states as the

primary public health authorities. 2021 U.S. App. LEXIS 33698 at *21 ("to mandate that a person receive a vaccine or undergo testing falls squarely within the States' police power").

75.     Third, it violates the non-delegation doctrine for the Secretary to wield such tremendous power with no greater guide than "appropriate." *Kentucky v. Biden*, No. 3:21-cv-00055-GFVT, 2021 U.S. Dist. LEXIS 228316, at *26–27 (E.D. Ky. Nov. 30, 2021) ("If OSHA promulgating a vaccine mandate runs afoul of the nondelegation doctrine, the Court has serious concerns about the FPASA, which is a procurement statute, being used to promulgate a vaccine mandate for all federal contractors and subcontractors"); *see also BST Holdings,* 2021 U.S. App. LEXIS 33698 at *8.

76.     Because the Head Start Rule mandating staff, student-facing contractors, and all volunteers of Head Start programs obtain the COVID-19 vaccine and wear masks is a federal action involving issues of major economic, social, and political significance, and the Head Start Act does not authorize it by a clear statement, it is beyond Defendants' statutory authority. *See Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 141 S. Ct. 2485, 2489 (2021).

77.     The Rule is also beyond Defendants' statutory authority because prior to modifying existing Head Start standards, Defendant Xavier Becerra was required to consult with "experts in the fields of child development, early childhood education, child health care, family services (including linguistically and culturally appropriate services to non-English speaking children and their families), administration, financial management, and with persons with experience in the operation of Head

Start programs." 42 U.S.C. § 9836a(a)(2)(A). But Becerra failed to do that here and instead only "consulted with experts in child health, including pediatricians, a pediatric infections disease specialist, and the recommendations of the CDC and FDA." 86 Fed. Reg. at 68,054.

78.    The Rule is also beyond Defendants' statutory authority because it creates a nationwide, one-size-fits-all mandate instead of one that takes into account community-specific considerations as 42 U.S.C. § 9836a(a)(2)(B)(x) requires.

79.    The Rule is also beyond Defendants' statutory authority because the law required the Secretary to ensure that revisions to Head Start Performance standards "will not result in the elimination of or any reduction in quality, scope, or types of health, educational, parental involvement, nutritional, social, or other services required" under prior standards. U.S.C. § 9836a(a)(2)(C). But here the Rule does just that—it will eliminate or reduce the quality, scope, or types of health, educational parental involvement, nutritional, social, or other services that prior standards required by forcing Head Start providers to terminate unvaccinated staff and volunteers.

80.    Given that for all these reasons the Rule is beyond the Defendants' statutory authority, it must be set aside and held unlawful. 5 U.S.C. § 706(2)(C).

## Count III

### The Rule is not in accordance with law
### because it failed to follow prescribed statutory steps.

81.     The allegations in all preceding paragraphs are incorporated herein by reference.

82.     Prior to modifying a performance standard, the Secretary of Health and Humans Services must "consult with experts in the fields of child development, early childhood education, child health care, family services (including linguistically and culturally appropriate services to non-English speaking children and their families), administration, and financial management, and with persons with experience in the operation of Head Start programs." 42 U.S.C. § 9836a(a)(2)(A).

83.     According to the Rule's text, the Secretary failed to consult with all of the required experts and only "consulted with experts in child health, including pediatricians, a pediatric infectious disease specialist, and the recommendations of the CDC and FDA." 86 Fed. Reg. at 68,054.

84.     Thus, the Secretary, by his own admission, did not consult with experts in administration, financial management, and with persons with experience in the operation of Head Start programs. Their expert insights would have been valuable, as the vaccine mandate has significant impacts on operations and administration because of the human resources implications for teachers like Plaintiff.

85.     This Court must "reverse agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

The failure to consult the necessary experts prior to promulgating the Rule renders the Rule not in accordance with law.

## Count IV

## The Rule is arbitrary and capricious

86.     The allegations in all preceding paragraphs are incorporated herein by reference.

87.     Agency action that is found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" must be held unlawful and set aside. 5 U.S.C. § 706(2)(A).

88.     The Defendants have not articulated a reasonable explanation for the Rule.

89.     The Rule is arbitrary and capricious because there is no evidence that vaccinating Head Start staff will reduce COVID-19 spread. In fact, the evidence shows the opposite—vaccinations do not prevent transmission of COVID-19.

90.     The Rule is arbitrary and capricious because CDC guidance says that "when making decisions about implementing [COVID-19] prevention strategies, [Early Care and Education/Child Care Programs] programs should consider the educational needs and social and emotional well-being of children and the importance of children's access to learning and care." Centers for Disease Control and Prevention, *COVID-19 Guidance for Operating Early Care and Education/Child Care Programs*, (Jan. 28, 2022).[21] Yet the Rule mandates vaccinations regardless of whether this will cause Head Start staff to quit and thereby leave young children without the staff members

---

[21] https://www.cdc.gov/coronavirus/2019-ncov/community/schools-childcare/childcare-guidance.html.

that they are used to learning from. The Rule also mandates vaccinations regardless of whether Head Start staff quitting their jobs will leave young children without access to schooling at all, which will damage their early development. Indeed, 42 U.S.C. § 9836a(a)(2)(C) requires the agency to ensure that revisions to Head Start Performance standards "will not result in the elimination of or any reduction in quality, scope, or types of health, educational, parental involvement, nutritional, social, or other services required" under prior standards. But here, these factors were not considered.

91.     The Rule is arbitrary and capricious because it skips over all other prevention strategies that the CDC recommends for protecting children and staff and that are less burdensome on Head Start staff's liberty interests, such as encouraging voluntary vaccination, physical distancing, testing, ventilation, handwashing, contact tracing, and staying home when sick. *Id.* Indeed, when OSHA announced its mandate for employers with a hundred employees or more, it gave employers the option of allowing for weekly testing in lieu of vaccinations. COVID-19 Vaccination and Testing; Emergency Temporary Standard, 86 Fed. Reg. 61,402, 61402 (Nov. 5, 2021) (to be codified at 29 C.F.R. pts. 1910, 1915, 1917, 1918, 1926, and 1928). The Defendants' failure to use a less burdensome alternative to mandatory vaccination, such as periodic testing, was arbitrary and capricious.

92.     The Rule is arbitrary and capricious because Defendant ACF failed to explain why its prior policies were insufficient. Specifically, ACF had issued COVID-19 guidance for Head Start programs prior to September 9, 2021. Beginning on March

12, 2020, ACF began providing programs with information about managing operations in the pandemic. This included best practices, suggested social media posts, posters, and other tools to promote vaccination for staff, students, and their families without a mandate.

93.    The Rule is arbitrary and capricious because it creates a nationwide, one-size-fits-all mandate instead of one that takes into account community-specific considerations. Indeed, 42 U.S.C. § 9836a(a)(2)(B)(x) requires those considerations to be taken into account. Moreover, certain other federal government COVID-19 restrictions only targeted areas of the country with high levels of COVDID-19 transmission, such as the CDC's eviction moratorium or the U.S. Department of Agriculture Food Safety Inspection Service's recent mask requirements.

94.    The Rule is arbitrary and capricious because the required experts were not consulted before modifying performance standards for Head Start recipients. Per 42 U.S.C. § 9836a(a)(2)(A) the Secretary was required to consult with "experts in the fields of child development, early childhood education, child health care, family services (including linguistically and culturally appropriate services to non-English speaking children and their families), administration, financial management, and with persons with experience in the operation of Head Start programs." But the Secretary failed to do that here and instead only "consulted with experts in child health, including pediatricians, a pediatric infections disease specialist, and the recommendations of the CDC and FDA." 86 Fed. Reg. at 68,054.

95.    The Rule is arbitrary and capricious because it has always been a pretext for wielding a general police power to regulate individuals' health decisions surrounding COVID-19 despite the federal government lacking a general police power. As the President's speech in September 2021 made clear, the myriad of mandates that he announced was about getting as many Americans as possible to take the vaccine. But given the President's speech and the amount of agencies across the federal government involved in issuing vaccine mandates, Chief Justice John Roberts's observation about the mandates is apt: "it's a little hard to accept the idea that this is particularized [to each agency's unique regulatory space], that it's an OSHA regulation, that it's a CMS regulation, that it's a federal contractor regulation." Transcript of Oral Argument at 79, *NFIB*, 142 S. Ct. 661.[22] Instead, as he concluded: "it seems to me that it's that the government is trying to work across the waterfront and it's just going agency by agency." *Id.* Or as the Fifth Circuit observed "After the President voiced his displeasure with the country's vaccination rate in September, the Administration pored over the U.S. Code in search of authority, or a 'work-around,' for imposing a national vaccine mandate." *BST Holdings, L.L.C*, 2021 U.S. App. LEXIS 33698 at *9. Given that the Rule is not really a true attempt to improve educational standards in the Head Start program and is really just pretext for a national vaccine mandate, the Rule lacks a reasonable connection to the Head Start program, and is therefore, arbitrary and capricious.

---

[22] https://www.supremecourt.gov/oral_arguments/argument_transcripts/2021/21a244_kifl.pdf

96.    Because the Rule is arbitrary and capricious, it must be held unlawful and set aside.

## Count V

### The Rule violates the U.S. Constitution's legislative power clause.

97.    The allegations in all preceding paragraphs are incorporated herein by reference.

98.    The Supreme Court "expect[s] Congress to speak clearly when authorizing an agency to exercise powers of vast economic and political significance." *Ala. Ass'n of Realtors v. HHS*, 141 S. Ct. 2485, 2489 (2021).

99.    Compulsory vaccination is a power "of vast economic and political significance."

100.    The Head Start Act does not contain a provision allowing OSHA, HHS, or the ACF to mandate vaccinations.

101.    The Head Start Act does not contain a sufficient principle guiding administrative discretion and therefore violates the non-delegation doctrine, which requires Congress to make major policy decisions and to give agencies sufficient guidance as to the exercise of their implementation.

102.    The Rule is therefore beyond Defendants' authority.

### Request for Relief

Plaintiff respectfully requests and prays for the following relief:

A.    Enter a declaratory judgment that the Head Start Rule was published without notice and comment in violation of the Administrative Procedure Act;

B.      Enter a declaratory judgment that the Head Start Rule mandating that staff, student-facing contractors, and all volunteers obtain the COVID-19 vaccine and mandating that all Head Start participants over age two wear masks exceeds the statutory authority of OHS, ACF, and HHS;

C.      Enter a declaratory judgment that the Head Start Rule is not in accordance with the law for failure to consult statutorily required experts, in violation of the Administrative Procedure Act.

D.      Enter a declaratory judgment that the Head Start Rule is arbitrary and capricious.

E.      In the alternative, enter a declaratory judgment that the Head Start Rule violates the nondelegation doctrine of Article I of the U.S. Constitution, and is therefore, unconstitutional.

F.      Enter a permanent injunction preventing Defendants from implementing the Rule;

G.      Award any further relief to which Plaintiff may be entitled, including attorneys' fees and costs; and

H.      Award such other relief as the Court deems equitable and just.


Dated: April 15, 2022                  Respectfully Submitted,

                                       /s/ Jeffrey D. Jennings
                                       Jeffrey D. Jennings (VSB No. 87667)
                                       Daniel R. Suhr (Admitted *Pro Hac Vice*)
                                       Liberty Justice Center
                                       440 N Wells St Suite 200,
                                       Chicago, IL 60654

Telephone: 312-637-2280
jjennings@libertyjusticecenter.org
dsuhr@libertyjusticecenter.org

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on April 15, 2022, I sent a copy of the foregoing to the

Defendants in this case via email at the following address:

> Rebecca Levenson
> Assistant United States Attorney
> US Attorney's Office (Alexandria)
> 2100 Jamieson Avenue
> Alexandria, VA 22314
> Rebecca.S.Levenson@usdoj.gov

> /s/ Jeffrey D. Jennings
> Jeffrey D. Jennings (VSB No. 87667)
> Liberty Justice Center
> 141 W. Jackson St., Ste. 1065
> Chicago, Illinois 60604
> Telephone (312) 263-7668
> Facsimile (312) 263-7702
> jjennings@libertyjusticecenter.org

> *Attorney for Plaintiff*